UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW PENNING,

                  Plaintiff,

v.

CONSUMER SOLUTIONS GROUP, LLC
and JACQUELYN A. WITMAN, a/k/a
JACQUELYN WITMAN VINCI,

                  Defendants.

_____/

COMPLAINT

**I.      Introduction**

      1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

      2.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use

false representations and threats to coerce the payment of money from consumers across the

country who allegedly have failed to repay payday loans.  This scheme, operated by defendants as

well as many other entities located in and around Buffalo, New York, Atlanta, Georgia and

Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown"

or "The Shake," that includes variations of the following:  The caller calls from a blocked

1

number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122,

by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America

against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New

York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located

in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and

violated the FDCPA and other laws, through a payday loan collection scheme that is

indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this

complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the

Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of

virtually every state, and the Better Business Bureau all have issued press releases that warn

consumers about this ongoing scam.

**II.    Jurisdiction**

4.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place

here.

**III.    Parties**

5.    Plaintiff Matthew Penning is an adult, natural person residing in Kent County,

Michigan.  Mr. Penning is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Mr. Penning is a "consumer," "debtor" and "person" as the terms are defined and used

in the MRCPA and MOC.

6.    Defendant Consumer Solutions Group, LLC ("CSG") is an active Georgia limited

liability company.  According to the 2014 Annual Report filed by CSG with the State of Georgia,

the current principal office address for CSG is 1970 Riverside Parkway, Suite 102,

Lawrenceville, Georgia 30043.  The current registered agent for CSG is Lisa M. Gable, 5875

Peachtree Industrial Boulevard, Suite 170, Norcross, Georgia 30092.  CSG uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

CSG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted

to be owed or due another.  CSG is a "debt collector" as the term is defined and used in the

FDCPA.  CSG is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, CSG is a "collection agency" and "licensee" as the terms are defined and used in

MOC.

7.      During all times pertinent hereto, CSG directly and indirectly participated in the

unlawful debt collection practices to collect an alleged debt from Mr. Penning that are described

in this complaint.

8.      According to the Restated and Amended Articles of Organization of Consumer

Solutions Group, LLC filed by CSG with the State of Georgia on March 7, 2014, the sole

Member Manager of CSG is defendant Jacquelyn A. Witman.

9.      CSG is a member of a debt collector trade group ACA International.  The ACA

International website states that CSG is in the business of "Third Party Collections" and that the

Manager and Ethics Contact for CSG is defendant Jacquelyn A. Witman, telephone number 866-

827-5678, fax number 404-410-4797.

10.     CSG maintains an internet website address, www.cs-groupllc.com, which was

anonymously registered on March 3, 2014 through DomainsByProxy.com.  The CSG website

states that the CSG business address is 2100 Riverside Parkway, Suite 119, #126, Lawrenceville,

4

Georgia 30043, but the address is merely a private mail box rented by CSG from a company

named Mail & Business – Shipping and Printing, located in the River Exchange Shopping

Center.  The CSG website states that CST "is an Atlanta based Corporation providing services

for delinquent account receivables . . . ."

11.     Defendant Jacquelyn A. Witman, also known as Jacquelyn Witman Vinci, is an

adult, natural person, age 32, purportedly residing at 2101 Oak Village Lane, Lawrenceville,

Georgia 30043-2928.  Mrs. Witman is the spouse of Peter Anthony Vinci, Jr., also known as

Pietro Anthony Vinci, Jr.  Mrs. Witman uses the email address of jacwit82@gmail.com.  Mrs.

Witman uses interstate commerce and the mails in a business the principal purpose of which is

the collection of debts.  Mrs. Witman regularly collects or attempts to collect, directly and/or

indirectly, debts owed or due or asserted to be owed or due another.  Mrs. Witman is a "debt

collector" as the term is defined and used in the FDCPA.  Mrs. Witman is a "regulated person" as

the term is defined and used in the MRCPA.  Alternatively, Mrs. Witman is a "collection

agency" and "licensee" as the terms are defined and used in MOC.

12.     During all times pertinent hereto, Mrs. Witman (a) created the collection policies

and procedures used by CSG and its employees and/or agents, in connection with their common

efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection

operations of CSG, (c) oversaw the application of the collection policies and procedures used by

CSG and its employees and/or agents, (d) drafted, created, approved and ratified the tactics and

scripts used by CSG and its employees and/or agents to collect debts from consumers, including

the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Penning as

alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used

by CSG and its employees and/or agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CSG and its employees and/or agents in attempts to collect an alleged debt from Mr. Penning as alleged in this complaint.

13.     During all times pertinent hereto, Mrs. Witman directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Penning that are described in this complaint.

14.     Mrs. Witman operates CSG as part of a broader, ongoing organization to extort money from consumers through the unlawful tactics that are described in this complaint.

15.     According to the State of Georgia, other business being operated from the same office suite as CSG include Wolftech Capital, LLC and JBEAR Enterprises, LLC.  Upon information and belief, other business being operated from the same office suite as CSG also include American Credit Resolution Incorporated and National Check Resolution Inc.

16.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

17.    In 2011, plaintiff Matthew Penning borrowed approximately $500.00 from an

internet payday lender named PayDayMax Ltd. ("PayDayMax").  Mr. Penning used the borrowed

funds for personal, family and household purposes.  Any resulting obligation of Mr. Penning to

pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MCPA.

18.    Mr. Penning allegedly failed to repay the debt.

19.    PayDayMax charged off the account and related, alleged debt.

20.    PayDayMax sold the account and related, alleged debt to an entity named Credit

Protection Depot, Inc., a Nevada corporation.

21.    Credit Protection Depot, Inc. sold the account and related, alleged debt to an entity

named Classic Receivable Solutions, LTD.

22.    Classic Receivable Solutions, LTD placed the account and related, alleged debt

for collection with an entity named National Check Resolution Inc.  Alternatively, Classic

Receivable Solutions, LTD sold the account to National Check Resolution Inc.

23.    On February 20, 2013, a female employee and/or agent of National Check

Resolution Inc. placed a call to Mr. Penning's cellular telephone and left a recorded message on

Mr. Penning's cellular telephone voice mail, representing: (a) she had received paperwork in her

office under Mr. Penning's name and social security number; (b) Mr. Penning was being sued;

(c) Mr. Penning was going to be served with the lawsuit either at his residence or his place of

employment; (d) Mr. Penning currently was scheduled to be served on February 22, 2013; and (e) "If you have any questions concerning this matter, you need to contact the plaintiff's office directly.  That's 888-240-7802, refer to your case number 174259."  The caller blocked her telephone number so that Mr. Penning would not know the identity of the caller.

24.    On February 20, 2013, Mr. Penning placed a call to telephone number 888-240-7802.  A female employee and/or agent of National Check Resolution Inc. answered the call with the words "Claims Office."  Mr. Penning stated that he was returning the call regarding Case Number 174259.  In the ensuing conversation, the employee and/or agent for National Check Resolution Inc. made the following statements to Mr. Penning:

(a)    "Mr. Penning, what it shows here is you have pending claims.  One is a bad check claim in the State of Michigan.  The other is a pending claim regarding an attempt to defraud a financial lending institution.  Both are for your PayDayMax loan taken out in 2011.

(b)    Mr. Penning was facing a claim for "theft by deception."

(c)    "They sent your file out for litigation for you to be served to appear in court.  Have you received those documents yet?"

(d)    "I thought you were calling because you had been served."

(e)    Because you haven't received service yet, you have an opportunity to settle this debt on a voluntary basis.

(f)    Our job is to arbitrate this debt.

(g)    I am checking our database to make sure no court date has been set for you.

8

(h)      We will send you an email with information regarding the account.

25.      On February 20, 2013, Mr. Penning received an email from National Check Resolution Inc. stating that Mr. Penning owed a balance of $1,141.85 in connection with his PayDayMax account and demanding that Mr. Penning make payment to National Check Resolution Inc.  The email stated that Mr. Penning's original PayDayMax account number was 1436459375.  A copy of the email is attached hereto as Exhibit A.

26.      On February 25, 2013, Mr. Penning filed a lawsuit against National Check Resolution Inc., Samuel Anthony Tulumello and Classic Receivable Solutions Ltd., in the United States District Court for the Western District of Michigan, Case No. 1:13-cv-207, alleging violations of the FDCPA and Michigan law.

27.      On March 8, 2013, Mr. Penning, National Check Resolution Inc., Samuel Anthony Tulumello and Classic Receivable Solutions Ltd. entered into a Release and Settlement Agreement, pursuant to which the defendants released Mr. Penning from all claims related to the alleged debt owed by Mr. Penning in connection with the PayDayMax account.

28.      On March 21, 2013, Mr. Penning filed a notice in the United States District Court for the Western District of Michigan, dismissing Case No. 1:13-cv-207.

29.      National Check Resolution Inc. is related to defendant Consumer Solutions Group, LLC.  Specifically, the two entities are or were under common ownership, common management and common control.

30.      CSG somehow acquired from National Check Resolution Inc. the information regarding Mr. Penning's account with PayDayMax, despite the fact that the Release and Settlement Agreement between Mr. Penning and National Check Resolution Inc. extinguished

the alleged debt.

31.     CSG then set out to collect money from Mr. Penning using the same unlawful tactics that had been used by National Check Resolution Inc.

32.     On or about March 4, 2015, defendants placed a call to Mr. Penning's elderly parents' land line telephone in connection with efforts to collect the alleged debt from Mr. Penning and defendants' employee and/or agent left the following message on Mr. Penning's elderly parents' telephone answering machine:  "Matt Penning, I'm calling regarding sealed documents I received in my office under your name and social security number.  I need you to be advised that this is the Certified Notice of Intent regarding a pending claim that has been filed against you.  If you have any questions in regard to the matter, you need to contact the claimant's office at 877-801-1263.  Refer to your personal Claim Number 2325842.  Unless I hear differently, documents are going to be submitted and sent off."

33.     On or about March 5, 2015, Mr. Penning placed a call to defendants at telephone number 877-801-1263.  The call was answered by defendants' female employee and/or agent with the words "Claims Department, how may I help you?"  Mr. Penning stated that he was calling about Claim Number 2325842.  Defendants' employee and/or agent asked whether she was speaking with Matthew Penning.  Mr. Penning confirmed that his name was Matthew Penning and he confirmed the last four numbers of his social security number.  In the ensuing conversation, defendants' employee and/or agent made the following representations to Mr. Penning:

a)      "The reason we are calling is the creditor named PayDayMax Limited has issued a judgment against you for $1,013.86."

10

b)      The claimant department wants to see if you want to pay the balance in full or set up payment arrangements "to stop service of the Notice of Intent."

c)      "They have a judgment against you for the current balance of $1,013.86."

d)      The loan was opened on December 26, 2011.

e)      The original account balance was $580.00.

f)      You have been charged $418.86 in collection fees, service fees and miscellaneous fees.

g)      The original account number was 1436459375.

h)      The name of our company is Walker Anderson Associates.  I'm the courier.

i)      The telephone number is 855-247-3123.

34.     On or about March 5, 2015, Mr. Penning placed a second call to defendants at telephone number 877-801-1263.  The call was answered by defendants' male employee and/or agent with the words "Thanks for calling the Claims Department, this is Cecil speaking, how may I help you?"  Defendants' employee and/or agent identified Mr. Penning from his telephone number.  In the ensuing conversation, defendants' employee and/or agent made the following representations to Mr. Penning:

a)      My name is Cecil.  My direct line is 857-247-9134, extension 1006.

b)      We are CSG, also known as Consumer Solutions Group.  We represent PayDayMax.  We are collecting for PayDayMax.

c)      Your current account balance is $1,013.86.

d)      PayDayMax has placed the account with us.  The next step is litigation.

11

  e)  In order to halt the litigation process, we need you to make payment arrangements by providing us with a pre-paid debit card.

  f)  We will not provide you with anything in writing regarding the account unless you first provide us with a pre-paid debt card.

35. On or about March 6, 2015, defendants placed a call to Mr. Penning's cellular telephone and defendants' employee and/or agent left the following message on Mr. Penning's voice mail: "This message is intended for Matt Penning. I'm giving you a second call regarding the documentation I did receive in my office filed under your name and social security number. I do have a request for a Notice of Intent regarding a pending claim that has been filed against you. My call today is to make sure you did receive this information properly. If you have any questions, contact the claimant's office at 877-801-1263."

36. On or about April 6, 2015, defendants placed a call to Mr. Penning's elderly parents' land line telephone in connection with efforts to collect the alleged debt from Mr. Penning and defendants' employee and/or agent left the following message on Mr. Penning's elderly parents' telephone answering machine: " . . . important legal matter. I've made several attempts to reach you in regards to the paperwork you must sign. Press one to connect to our office now. If we do not hear from you by the end of the business day, we will assume you have no intent to taking care of this voluntarily and we will move forward accordingly. Press one to connect to our office now or we can be reached Monday through Friday, 9:00 a.m. to 6:00 p.m., at 1-888-906-0964. Again, that number is 1-888-906-0964."

37. The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing

and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, and unlawful harassment of the consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants have coerced the payment of millions of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

38.     Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and the their companies.

39.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that they were process servers.

40.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that they represented the original creditor of the account.

41.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that they had the legal right to collect the account.

42.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that there were legal claims pending against Mr. Penning.

43.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that a lawsuit had been filed against Mr. Penning to collect the alleged debt.

44.     Defendants and their employees and agents in the described communications

falsely represented and falsely implied to Mr. Penning that a lawsuit would be filed against Mr. Penning to collect the alleged debt.

45.     Defendants and their employees and agents in the described communications falsely represented to Mr. Penning the amount of the alleged debt.

46.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that defendants retain lawyers to collect the debts.

47.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that defendants intended to retain lawyers to collect the alleged debt from Mr. Penning.

48.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that lawyers were involved in defendants' efforts to collect the alleged debt from Mr. Penning.

49.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Penning that Mr. Penning was going to be served with a summons and complaint.

50.     Defendants did not intend to file a lawsuit against Mr. Penning in any Michigan court in efforts to collect the alleged debt.

51.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

52.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in

14

connection with the collection of any debt.  15 U.S.C. § 1692d.

53.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

54.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

55.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

56.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

57.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

58.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

59.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

60.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

61.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

62.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

63.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

64.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

65.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

66.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

67.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

16

68.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

69.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

70.     Defendants and their employees and/or agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

71.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

72.     Defendants failed to provide Mr. Penning with the information it was required to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

73.     Mr. Penning's parents heard the messages left by defendants on their telephone answering machine for Mr. Penning.

74.     Mr. Penning has never given defendants permission to communicate with his parents regarding the alleged debt.

75.     A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

76.     The FDCPA defines "location information" to mean "a consumer's place of abode

and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

77.  A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

78.  Defendants and their employees and/or agents communicated with Mr. Penning's parents for a purpose other than to acquire location information regarding Mr. Penning.

79.  Defendants and their employees and/or agents communicated to Mr. Penning's parents that Mr. Penning allegedly owed a debt and thereby violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

80.  Defendant and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, yet to be identified in discovery, are engaged in a organized scheme, through which they directly and indirectly conspire to purchase and collect delinquent payday loans, as well as to collect money in connection with accounts they do not own or on which no money is owed, by using the above-described debt collection practices, in violation of the FDCPA (and various state laws, including Michigan law), and that include the use of scripted threats of faked litigation and demands for payments in amounts that exceeded the amount expressly authorized by the agreement creating the debt or permitted by law.  Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful tactics, to collect or attempt to collect money from more than one thousand persons.  The enterprise remains active and ongoing.

81.  Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of

18

the unlawful debt collection practices that are described in this complaint.

82. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

83. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

84. Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

85. As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

86. Plaintiff incorporates the foregoing paragraphs by reference.

87. Each defendant has violated the FDCPA. Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692b;

b)     Defendants violated 15 U.S.C. § 1692c;

c)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

88.     Plaintiff incorporates the foregoing paragraphs by reference.

89.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 3 – Michigan Occupational Code

90.     Plaintiff incorporates the foregoing paragraphs by reference.

91.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)        Actual damages pursuant to M.C.L. § 339.916;

b)        Treble the actual damages pursuant to M.C.L. § 339.916;

c)        Statutory damages pursuant to M.C.L. § 339.916;

d)        Equitable relief pursuant to M.C.L. § 339.916; and

e)        Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


### Demand for Trial by Jury

Plaintiff demands trial by jury.


Dated: April 10, 2015                            /s/ Phillip C. Rogers
                                                  Phillip C. Rogers (P34356)
                                                  Attorney for Plaintiff
                                                  40 Pearl Street, N.W., Suite 336
                                                  Grand Rapids, Michigan 49503-3026
                                                  (616) 776-1176
                                                  ConsumerLawyer@aol.com